**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Joshua W. Sprague

v.

Civil No. 24-cv-274-SE-AJ
Opinion No. 2026 DNH 117

Gary Burke et al.[1]

**ORDER ON (SECOND) MOTION FOR PRELIMINARY INJUNCTION**

Before the court is plaintiff Joshua W. Sprague's (second) motion for a preliminary injunction (Doc. No. 14) ("Second PI Motion") as supplemented by status reports (Doc. Nos. 15-17). Sprague seeks an order requiring his transfer back from the Florida prison system to a prison in New Hampshire or New England to be closer to family, friends, and the attorney representing him in his state post-conviction proceedings. Sprague's Second PI Motion fails under applicable standard because his pleadings do not demonstrate a substantial likelihood of success on the merits or irreparable harm in the absence of preliminary injunctive relief.

**Preliminary Injunction Standard**

Sprague previously filed a similar motion for a preliminary injunction, see Doc. No. 2 ("First PI Motion"), which this court denied in September 2025. See Sept. 29, 2025 Order (Doc. No. 12) (approving Aug. 28, 2025 R&R (Doc. No. 10)). In ruling on Sprague's Second PI Motion, this court employs the same legal standard set forth in the August 28, 2025 R&R (Doc. No. 10). The movant must demonstrate a substantial likelihood of success on the merits,

[1] Sprague names the following former or current N.H. Department of Corrections ("NHDOC") officers, employees, or contractors as defendants in their individual and official capacities: NHDOC Commissioner Helen Hanks; N.H. State Prison ("NHSP") Warden Michelle Edmark; NHSP Deputy Warden Sarah Provencher; NHSP Capt. Gary Burke; NHSP Classifications Officer Glenn Matthews; NHSP Hearings Officer Stephen O'Rourke; NHSP Corrections Officer Claudio Rodrigues; and unnamed NHSP health care providers, identified as "John Doe" and "Jane Doe."

irreparable harm, the balance of equities tipping in the movant's favor, and the public interest favoring the preliminary injunction. Glossip v. Gross, 576 U.S. 863, 876 (2015). The likelihood of success on the merits and the likelihood of irreparable harm in the absence of an injunction are the factors that weigh most heavily in the analysis. See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). Moreover, in prison conditions cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## Background

### I. Sprague's Sentence and History of Transfers

Sprague is serving a sentence of life in prison without the possibility of parole for his 2011 first degree murder conviction in State v. Sprague, No. 216-2010-cr-00246 (N.H. Super. Ct., Hillsborough Cty.-N.D.). See generally State v. Sprague, 166 N.H. 29, 86 A.3d 700 (2014).

Sprague served his sentence to date in two New Hampshire Department of Corrections ("NHDOC") facilities and in prisons in South Carolina and Florida, pursuant to transfers made under the Interstate Corrections Compact ("ICC"). "The ICC is an agreement between states, enacted by statute in each participating state, that authorizes the transfer of one State's prisoner to another State's prison." Ivester v. Sweeny, No. 19-16559 (FLW) (DEA), 2022 WL 17733676, at *9, 2022 U.S. Dist. LEXIS 226686, at *22 (D.N.J. Dec. 16, 2022).

> The [ICC] "is designed to permit cooperative use of facilities and programs . . . by the states which are parties to the Compact."

Morales v. Hanks, No. 23-cv-00522-SM-TSM, 2024 WL 5445726, at *2, 2024 U.S. Dist. LEXIS 240938, at *3 (D.N.H. Aug. 2, 2024) (citations omitted), R&R approved, 2025 WL 712745, 2025 U.S. Dist. LEXIS 39067 (D.N.H. Mar. 5, 2025).

Sprague was incarcerated at the New Hampshire State Prison ("NHSP") beginning in 2011, and then at the Northern New Hampshire Correctional Facility ("NCF"), until NHDOC officials sent him to the South Carolina Department of Corrections, where he remained from August 31, 2023, until May 20, 2024. NHDOC officials then transferred Sprague to the Florida Department of Corrections ("FDOC"). Sprague was at the Walton Correctional Institution in Florida when he filed this case in August/September 2024. Sometime in late 2025 or early January 2026, Sprague was sent to the FDOC's Marion Correctional Institution, and then, sometime before May 15, 2026, Sprague was transferred to the FDOC's Everglades Correctional Institution, where he remains at this time. See Doc. Nos. 13, 15.

## II. Post-Conviction Proceedings

Sprague litigated a series of post-conviction proceedings while incarcerated in New Hampshire and out of state. Counsel appearing on Sprague's behalf filed Sprague's first state habeas petition in 2014. See Sprague v. NHDOC Comm'r, No. 217-2014-cv-0254 (N.H. Super. Ct., Merrimack Cty.) ("First State Habeas Petition"). The Superior Court denied Sprague's First State Habeas Petition, and the New Hampshire Supreme Court ("NHSC") declined to accept Sprague's appeal. See Sprague v. Comm'r, No. 2015-0212 (N.H. Aug. 4, 2015). Sprague was incarcerated in NHDOC facilities while that case was litigated.

A different lawyer retained by Sprague, Attorney William R. Sullivan, Jr., filed Sprague's second state habeas petition in 2020, see Sprague v. Edmark, No. 217-2020-cv-0073 (N.H. Super. Ct., Merrimack Cty.) ("Second State Habeas Petition"). Respondent filed a motion to dismiss that petition in December 2022, seven months before Sprague's out-of-state transfers began. Sprague did not file any objection to that motion to dismiss. After Attorney Sullivan withdrew from that case in December 2024, the Superior Court granted the motion to dismiss on

February 11, 2025, and then denied Sprague's pro se motion to reconsider.[2] See Feb. 11, 2025 Margin Order & Mar. 19, 2025 Margin Order, id. (Index Nos. 33, 60).

Sprague filed his third state habeas petition in December 2025 pro se. See Sprague v. Edmark, No. 217-2026-cv-0013 (N.H. Super., Hillsborough Cty., N. Div., filed Dec. 22, 2025) ("Third State Habeas Petition"). Attorney Sullivan filed an appearance in that case in January 2026 on Sprague's behalf. The Third State Habeas Petition remains pending at this time, with Attorney Sullivan continuing to represent Sprague in that case. See id.

Sprague is the self-represented petitioner in a pending federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the District of New Hampshire. See Sprague v. N.H. Dep't of Corr., No. 14-cv-401-JL-AJ (D.N.H., filed Sept. 16, 2014). That case is presently stayed. See May 27, 2026 Order, id.

**Claims Pertinent to (Second) Motion for Preliminary Injunction**

Construed liberally, Sprague's prisoner civil rights Complaint here (Doc. No. 1) asserts a number of claims for injunctive relief and damages under 42 U.S.C. § 1983, alleging violations of his rights relating to the conditions of his confinement in New Hampshire, South Carolina, and Florida. In denying without prejudice Sprague's First PI Motion, this court ruled that

---

[2] The Superior Court Order granting the Respondent's motion to dismiss the Second State Habeas Petition states, as follows:

> Motion to dismiss is granted for the reasons set out in the motion. Also, no objection filed. . . .

Margin Order Granting Dec. 1, 2022 Mot. to Dismiss (Index No. 33), Sprague v. Edmark, No. 217-2020-cv-0073 (N.H. Super. Ct., Merrimack Cty. Feb. 11, 2025). The reasons expressed in the motion to dismiss, incorporated by reference in that Order, include that the claims asserted in the Second State Habeas Petition were successive ("overwhelmingly repetitive of [Sprague's] previous petition"), previously decided in Sprague's First State Habeas Petition, and were otherwise without merit. See Resp.'s Mot. to Dismiss Pet. For Writ of Habeas Corpus, id., at 2.

Sprague's claims for injunctive relief, challenging the conditions of his confinement in South Carolina and New Hampshire facilities, are now moot because he is in Florida facilities. See Sept. 29, 2025 Order (Doc. No. 12); see also Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (prisoner's claim for injunctive relief challenging prison conditions or policies is generally mooted by his transfer or release; "absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits" of claims challenging conditions to which he is no longer subjected).

Sprague's claims for injunctive relief that do not appear to be mooted by his transfer to Florida are summarized below:

1. The Defendant NHDOC prison officials violated Sprague's federal rights, relating to the transfers culminating in his May 2024 arrival in FDOC custody, in that:

a. The transfers were effected by defendants in retaliation for Sprague's exercise of his First Amendment rights;

b. The transfer to the FDOC interfered with Sprague's contacts with his counsel in his state post-conviction proceedings, in violation of Sprague's Sixth Amendment, First Amendment, and Fourteenth Amendment rights;

c. The transfer to the FDOC impairs Sprague's access to his case files, his access to New Hampshire laws and cases, and his communications with counsel, in violation of Sprague's right of access to the courts;

d. The transfer to the FDOC deprives Sprague of visits from family and friends, in violation of his federal rights; and

e. The transfer violates Sprague's Fourteenth Amendment right to equal protection and amounts to cruel and unusual punishment under the Eighth Amendment.

## Discussion

I. First Amendment Retaliatory Transfer Claim (Claim 1(a))

> To prevail on a First Amendment retaliation claim, a prisoner must show that he engaged in protected activity, that defendants took an adverse action against him that would deter a prisoner of ordinary firmness from continuing to engage in that conduct, and that there is a causal link between the protected activity and the adverse action. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011); see McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (stating that prisoner claiming retaliatory transfer must prove that he would not have been transferred "but for" the alleged retaliatory reason).

Turner v. Wall, No. 18-1869, 2020 WL 5543935, at *1, 2020 U.S. App. LEXIS 30047, at *3 (1st Cir. May 5, 2020). If defendants present a legitimate non-retaliatory reason for a transfer, the plaintiff must present evidence sufficient to contradict the defendants' legitimate rationale. See Hannon, 645 F.3d at 49-50.

As explained in the August 28, 2025 R&R, approved by the September 29, 2025 Order, the Complaint's exhibits point to a safety or security rationale for transferring Sprague out of state: Sprague expressed fears for his safety while incarcerated in New Hampshire. This court considered the record before the court in September 2025 and concluded that Sprague had not shown any likelihood of success on an argument that the safety and security rationale for the transfer was pretextual, and further concluded that Sprague had not otherwise demonstrated any likelihood of success on the merits of his First Amendment retaliation claim. See Sept. 29, 2025 Order (approving Aug. 28, 2025 R&R).

The arguments and evidence presented in connection with Sprague's (second) PI motion do not alter the court's conclusion. Sprague essentially rehashes the same arguments and speculative conclusions that do not show that any defendant responsible for his transfers knew that his fears of harm were delusional, or that defendants responsible for his transfer otherwise lacked a non-retaliatory rationale for transferring him out-of-state. Accordingly, Sprague has

failed to show that he is likely to succeed on the merits of his First Amendment retaliation claim, and the district court should deny the Second PI Motion as to that claim.

II. Attorney Phone Calls and Legal Mail (Claims 1(b)(i)-(ii))

Sprague claims that his out-of-state transfer interfered with his ability to communicate with counsel in 2024, in violation of his federal rights. In particular, Sprague asserts that because he lacked funds to make a collect call to his counsel in 2024, he could not send Attorney Sullivan timely information to let him know how Sprague could be reached by phone or mail at the FDOC's Walton Correctional Institution (where he was from May 2024 through December 2024), and, Sprague asserts, those restrictions on his contacts with counsel led to the breakdown in communications between Sprague and Attorney Sullivan at that time.[3]

Sprague's interference-with-counsel-claim finds no support in the Sixth Amendment, as the Sixth Amendment right to counsel applies to the relationship between an attorney and his or her client in criminal proceedings. Wolff v. McDonnell, 418 U.S. 539, 576 (1974). There is "no constitutional right to counsel in state postconviction proceedings." Shinn v. Ramirez, 596 U.S. 366, 383 (2022). Accordingly, Sprague has failed to demonstrate any likelihood of success on a Sixth Amendment right to counsel claim.

As to Sprague's First Amendment and Fourteenth Amendment claims concerning the restrictions on legal mail and attorney phone calls, the "burden . . . is not on the State to prove

[3] An attorney who needs to call a Florida prisoner relating to a pending legal matter must make arrangements in advance by providing the attorney's Bar number and other information to prison officials. See generally Fla. Admin. Code Ann. r. 33-602.205(3)(a) (FDOC rules governing prisoner-attorney phone calls). FDOC rules also require an attorney representing a prisoner to obtain an Attorney Registration Number and to mark correspondence from the attorney in the manner specified in FDOC rules, see Fla. Admin. Code Ann. r. 33-210.102(4) (FDOC rules regarding legal mail).

the validity of prison regulations but on the prisoner to disprove it." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). A prison regulation that impinges on prisoners' constitutional rights is valid "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). The legal mail restrictions Sprague highlights in his motion -- requiring counsel to contact prison officials and to provide his Bar number to prison officials -- resemble the type of prison policies relating to incoming legal mail that the Court in Wolff v. McDonnell, 418 U.S. 539 (1974), characterized as "certainly . . . permissible." Id. at 577; see also Fontroy v. Beard, 559 F.3d 173, 183 (3d Cir. 2009) (prison policy of requiring attorney or court "control numbers" on legal mail was reasonably related to legitimate penological interests). To that extent, Sprague has not demonstrated a likelihood of success on the merits of his claims.

Sprague also points to the FDOC restrictions on phone calls as impeding his communications with counsel, including the requirement that prisoners place collect calls to counsel. "As a prisoner," however, Sprague "does not have an unfettered right to use a prison phone on his own terms." Stile v. Cumberland Cty. Jail, No. 2:12-cv-00260-JAW, 2013 WL 1881300, at *8, 2013 U.S. Dist. LEXIS 65003, at *26 (D. Me. Mar. 26, 2013) (finding no constitutional violation imposed by jail's collect calling system despite prisoner's claim that direct dial system would enable prisoners to have better access to counsel), R&R adopted, 2013 WL 1881743, 2013 U.S. Dist. LEXIS 64144 (D. Me. May 6, 2013). "Prison officials may restrict a prisoner's telephone privileges in a reasonable manner." McMaster v. Pung, 984 F.2d 948, 953 (8th Cir. 1993). "Restrictions on telephone calls to counsel may be imposed as long as prisoners have some means of access to counsel and the courts." Woods v. St. Louis Justice Ctr., No. 4:06-CV-233 CAS, 2007 WL 2409753, at *10, 2007 U.S. Dist. LEXIS 60993, at *32 (E.D. Mo. Aug. 20, 2007) (citing McMaster, 984 F.2d at 953). Sprague can call collect, and he retains

the ability while incarcerated in Florida to contact his counsel by mail with free postage, if he cannot afford the cost of his outgoing legal mail. See Fla. Admin. Code Ann. r. 33-210.102(18). Because that method of communication remains open to Plaintiff, he has not demonstrated a substantial likelihood of success on the merits of his claims relating to the restrictions on his communications with counsel. Accordingly, his motion for a preliminary injunction is denied with respect to that claim.

III. Access to the Courts (Claim 1(c))

Sprague contends that he lacks access to case files and discovery from his criminal case while at the FDOC, including a thumb drive that he cannot receive through the mail while at the FDOC. He further asserts that New Hampshire cases and statutes are not available in the FDOC law libraries, and he claims that his transfer and the decision to keep him in FDOC facilities deprives him of access to the state and federal courts, in violation of his federal rights.

A. Elements of Access to Courts Claim

"NHDOC prisoners incarcerated out of state…alleging a denial of access to the courts at the out-of-state prison may proceed on those claims against NHDOC defendants." Perfetto v. Duffy, No. 22-cv-128-JL-AJ, 2024 WL 712813, at *3, 2024 U.S. Dist. LEXIS 31230, at *6 (D.N.H. Jan. 22, 2024), R&R approved, 2024 WL 710279, 2024 U.S. Dist. LEXIS 28232 (D.N.H. Feb. 20, 2024). To prevail on a claim that prison officials violated Sprague's right of access to the courts, Sprague must show that he suffered an actual injury in his ability to pursue a claim that was not frivolous in a matter that he had a right to litigate, as a result of defendants' decision to place him in Florida. See Lewis v. Casey, 518 U.S. 343, 352, 354-55 (1996). Sprague must show that an actionable claim has been lost or rejected or defendants' actions are presently preventing Sprague from litigating any nonfrivolous claim in a prisoner civil rights

case or in a post-conviction proceeding. Guglielmo v. N.H. State Prison, No. 96-2307, 111 F.3d 122, 1997 WL 205290, at *1, 1997 U.S. App. LEXIS 8616, at *2-3 (1st Cir. Apr. 25, 1997) (unpublished table decision) (citing Lewis, 518 U.S. at 356).

B. Lack of Actual Injury in Federal Cases

Sprague is presently litigating two federal cases: a § 2254 Petition and this civil rights case. Sprague is self-represented here and in his § 2254 Petition. The court in this case has not dismissed any claim asserted here, and all of Sprague's claims appear to be asserted under federal law, not New Hampshire law. See Sept. 29, 2025 Order (approving Aug. 28, 2025 R&R). Moreover, Sprague's § 2254 Petition is presently stayed. Sprague has not demonstrated any actual injury in that case, resulting from his transfer and continued incarceration in Florida. Upon similar evidence and arguments, this court denied Sprague's First PI Motion upon concluding that Sprague had failed to demonstrate any actual injury in this case, or any likelihood of prevailing on the merits of his access to the courts claims with respect to his federal cases. The same conclusion is warranted with respect to Sprague's Second PI Motion.

C. Access to Courts Relating to State Habeas Petitions

Sprague is presently litigating his Third State Habeas Petition in Superior Court, having filed it pro se while incarcerated in Florida, and Attorney Sullivan has since appeared in that case on Sprague's behalf. Sprague fears that the Superior Court may dismiss his Third State Habeas Petition as it dismissed his Second State Habeas Petition, which Sprague believes resulted from his lack of access to New Hampshire-specific laws, rules, and cases, as well as FDOC policies limiting his ability to communicate with counsel. He also highlights his inability while in Florida to obtain access to a thumb drive containing a substantial volume of case files he has not previously seen. Finally, he complains that defendants have refused to transport him to New

Hampshire to attend hearings for his Second and Third State Habeas Petition as ordered by the Superior Court.

This court considered similar arguments in denying Sprague's (first) PI motion. The court determined that Sprague failed to show more than a speculative connection between the February 2025 dismissal of his Second State Habeas Petition and his transfer to Florida. See Sept. 29, 2025 Order (approving Aug. 28, 2025 R&R). Moreover, the fact that Sprague is currently represented by Attorney Sullivan in his Third State Habeas Petition "precludes [Sprague's] claim for denial of access to the courts based on the [NHDOC] defendants' failure to assist him with legal research." Perfetto, 2024 WL 712813, at *3, 2024 U.S. Dist. LEXIS 31230, at *7 (New Hampshire prisoner housed out of state who was represented by court-appointed counsel in his post-conviction proceedings failed to state claim of denial of access to courts arising from alleged failure of NHDOC officials to ensure he received state-specific legal resources or legal assistance). Nothing asserted in Sprague's instant motion warrants further reconsideration of this court's prior ruling denying a transfer based on his substantially similar access-to-the-courts claim, and the same reasoning and result are proper here.

As for Sprague's allegations that the defendants have prevented him from participating in his state habeas cases by violating Superior Court transport orders, he has failed to establish a likelihood of success for multiple reasons. He has not alleged any inability to participate in the Superior Court hearings in some alternative fashion, such as telephonically. He has alleged that the NHDOC, rather than any individual defendant, violated the transport orders, nearly ensuring that the claim is barred by the Eleventh Amendment and similarly not actionable under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).

Even if Sprague could demonstrate any likelihood of success, the relief he seeks here – a court-ordered transfer – would not be granted. Attorney Sullivan already has access to the necessary law and legal resources and Sprague's case files to litigate in Superior Court on Sprague's behalf, and he may summarize, reproduce, and mail to Sprague any papers Sprague needs to review. Sprague's fears about another "breakdown" in communications attributable to his transfer to Florida appear speculative at this time, and a transfer is not necessary to avoid any harm as to his court access. Sprague may obtain relief from the Superior Court regarding his participation in his post-conviction proceedings. He has not demonstrated that irreparable harm will occur unless this court orders his return to New Hampshire. Accordingly, Sprague's Second PI Motion is denied with respect to that claim.

IV. Separation from Friends and Family (Claim 1(d))

Sprague's instant preliminary injunction motion -- like his First PI Motion this court denied approximately one year ago -- asserts that Sprague's imprisonment in Florida affects his relationship with family and friends in New Hampshire, particularly his connection with his child who is a minor. A prisoner's ability to communicate with family and friends is necessarily affected by incarceration. See Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ("[s]ome curtailment of that freedom must be expected in the prison context").

This court denied Sprague's first preliminary injunction motion reasoning that Sprague presented no evidence to show that any irreparable harm to his close relationships will result unless he is transferred back to New Hampshire. As this court noted then, prisons in Florida offer electronic communication, including email and video visits, to facilitate family contacts

when in-person visits may not be practical.[4] Without more, the mere fact that Sprague's child is among the family members unable to visit Sprague since Sprague's transfer to Florida does not change the proper disposition of Sprague's motion for a preliminary injunction in that regard. Accordingly, Sprague's (second) motion for a preliminary injunction is denied with respect to that claim.

V. Remaining Claims

Sprague claims that the transfer to Florida violates his rights to equal protection and his rights under the Eighth Amendment. The Fourteenth Amendment Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted). "To establish an equal protection claim, a plaintiff needs to allege facts showing that '(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Davis v. Coakley, 802 F.3d 128, 132-33 (1st Cir. 2015) (citation omitted).

Sprague does not plead any facts suggesting he is a member of any protected class, and he identifies no similarly situated prisoners who were treated differently, with respect to the transfer decision or the failure to return him to New Hampshire. Without more, Sprague fails to demonstrate any likelihood of success on the merits of an equal protection claim.

---

[4] See generally Fla. Admin. Code Ann. r. 33-602.900 (kiosks and tablets), 33-602.901 (video visitation); see also Peterka v. Dixon, No. 4:21CV367-WS-MAF, 2024 WL 4251914, at *3-4 & n.5, 2024 U.S. Dist. LEXIS 171760, at *4-5, *10 n.5 (N.D. Fla. Aug. 20, 2024), R&R adopted, 2024 WL 4347873. 2024 U.S. Dist. LEXIS 176470 (N.D. Fla. Sept. 30, 2024), aff'd, No. 24-13503, 2025 WL 2251853, 2025 U.S. App. LEXIS 19965 (11th Cir. Aug. 7, 2025).

A prisoner asserting that the conditions of his confinement violate his Eighth Amendment rights must show that "the deprivation alleged [is] objectively, sufficiently serious," such that the Defendant's act or omission presents "a substantial risk of serious harm" to the prisoner. Cintron v. Bibeault, 148 F.4th 37, 47 (1st Cir. 2025) (internal quotation marks and citations omitted). In addition, the prisoner must show that Defendants were aware of circumstances that gave rise to an inference that their acts or omissions subjected the prisoner to a substantial risk of serious harm, and they did not take reasonable steps to address that need or alleviate the risk. See Farmer v. Brennan, 511 U.S. 825, 828-29 (1994). The facts alleged in the Second PI Motion fail to suggest that Sprague's transfer to Florida subjects him to any substantial risk of serious harm as to which any Defendant manifests deliberate indifference.

**Conclusion**

For the foregoing reasons, the (second) motion for a preliminary injunction (Doc. No. 14) is denied.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 1, 2026

cc: Joshua W. Sprague, pro se